**SO ORDERED.**

**SIGNED this 30 day of April, 2007.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Sherry Ann Derryberry** | ) | **No. 07-10831** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

**MEMORANDUM**

This case came before the court on the Chapter 13 Plan filed by the debtor on March 2, 2007, as orally amended on April 12, 2007, and objections to confirmation thereof filed by Donna Dodson and the chapter 13 trustee on April 3 and 4, 2007, respectively. For the reasons set forth below, the court will sustain the objections, deny confirmation of the plan, and dismiss this case.

In 1997, the debtor pleaded guilty to charges of theft, embezzlement from her employer, filing a false police report by reporting that she had been kidnapped, and arson for burning her

-1-

employer's business. She was sentenced to 34 years in prison and served seven years, four months of that term. The criminal judgment did not include an order that the debtor make restitution.

While the debtor was in prison, a civil suit was brought against her by Ms. Dodson, who did business under the name Catoosa Industrial Supply in the same building as the debtor's former employer. The suit, for damages caused to Ms. Dodson and her business by the fire set by the debtor, resulted in a default judgment entered in October 1999 for $60,000 in actual damages and $250,000 in punitive damages.

The debtor was released from prison in August 2004. She did not immediately obtain employment, but spent the next eight months caring for her terminally ill mother. After her mother died, the debtor worked part-time operating a salad bar, earning a total of $1,166.80 in 2005.[1] She began working full-time for Pro-Ad Sports, Inc., in September 2006 and presently earns $9.00 per hour.

In August 2006, the debtor inherited about $22,400 from her mother's estate. She used $14,000 of that money to purchase a 2002 Mazda automobile and $1,000 to pay a debt to her ex-sister-in-law for a van that she had purchased for use when she was first released from prison. The debtor also paid about $1,000 to the Internal Revenue Service, bought a $132 cell phone, and paid a few hundred dollars more on old utility bills or as utility deposits so she could obtain utility service at her apartment. After making those payments, the debtor had about $6,000 left.

---

[1] The debtor's 2005 income tax returns reflect income for that year of $5,405, but the copies introduced into evidence do not identify the source of the additional $4,200 in income for that year.

The debtor testified that she used the $6,000 for living expenses. None of the $22,400 was paid by the debtor toward the judgment obtained by Ms. Dodson.

On March 2, 2007, the debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Her schedules of liabilities indicate that Ms. Dodson is her only creditor, holding a claim of $310,000 evidenced by a judgment. The debtor's schedule of current income indicates that she has take-home pay of $1,055.27 per month, and her schedule of current expenditures indicates that her monthly living expenses (all of which are modest) total $947.00, leaving $108.27 per month in disposable income with which to fund payments under a chapter 13 plan. The plan that the debtor originally proposed provided for payments of $25.00 per week for 36 months but, at the hearing on confirmation of the plan, the debtor orally amended the plan to provide that the payments would continue for 60 months. The debtor owns no real property, and her personal property (including the $8,700 Mazda automobile, which the debtor owns free and clear) has a total value of $9,77.10 according to the debtor's schedules of assets. The debtor is 56 years old and has no dependents. She acknowledges not having made any payments on the judgment held by Ms. Dodson.

Debts for willful and malicious injury are not dischargeable in chapter 7 bankruptcy cases irrespective of whether the injury is to person or property, 11 U.S.C. § 523(a)(6), but in chapter 13 cases debts for willful and malicious injury to property are dischargeable while debts for willful and malicious injury to persons are not, *id.* § 1328(a)(2), (4). Nevertheless, Ms. Dodson and the trustee assert that the plan was not proposed in good faith since the debt would not be dischargeable in a chapter 7 case, the debtor has only one debt, and she has made no

efforts to make payments on the debt despite receiving an inheritance of $22,400 in August 2006.

In contending that the debtor's chapter 13 plan was not proposed in good faith, Ms. Dodson relies on the Sixth Circuit's unreported opinion in *Hardin v. Caldwell*, 897 F.2d 529 (6th Cir. 1990) (unpublished table decision), *available at* 1990 WL 20457. In that case, a judgment was entered against the debtor for $10,000 in compensatory damages and $10,000 in punitive damages for assault and battery, conspiracy to maliciously prosecute, false arrest, and false imprisonment. Nine years later, the debtor filed a chapter 13 petition, proposing to make payments of $48 per week for three years. The debtor increased his payments at the confirmation hearing, and the bankruptcy court confirmed the plan. *Id.*, 1990 WL 20457, at *1. The district court affirmed, *id.* at *2, but the court of appeals reversed, holding that the bankruptcy court's finding of good faith was clearly erroneous.[2]

The panel first restated its prior precedents requiring an analysis of the "totality of the circumstances" in evaluating good faith, and listed many of the factors that may be among those considered. *Id.* at *2-*3. The opinion then suggested that it is bad faith to propose a chapter 13 plan solely to avoid the consequences of the debt being nondischargeable in a chapter 7 case:

> In the case sub judice, it is important to note that Caldwell's debt to the judgment creditors is nondischargeable under Chapter 7. In another bankruptcy case involving a proposed nominal repayment of nondischargeable debt that Caldwell's father owed to these same judgment creditors, we recently addressed the standards requisite to a Chapter 13 plan:

---

[2] This judge, sitting in Knoxville, was the bankruptcy judge who heard the *Caldwell* case and whose finding of good faith in that case was found to be clearly erroneous by the Sixth Circuit Court of Appeals.

> Discharge under Chapter 13, though a salvation for some debtors, is a loophole for others. The good faith, or lack of it, with which the plan is proposed, distinguishes a sincere effort at repayment from a false one. Courts should not approve Chapter 13 plans which are nothing more than "veiled" Chapter 7 plans. A Chapter 13 plan which proposes to repay only a small portion of a debt which could not be discharged under Chapter 7 deserves "particular scrutiny."

*Id.* at *3 (quoting *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990) (citations omitted)). The court then held, as a matter of law, that proposing a plan that satisfies the requirement that all disposable income be distributed to creditors does not *per se* satisfy the additional requirement that the plan be proposed in good faith. *Id.* at *3-*4. Accordingly, the court concluded that the debtor's motivation indicated bad faith: "The record in this case suggests that Caldwell's decision to file in bankruptcy was not motivated by a sincere desire to repay his creditors but represents an attempt by him to escape the consequences of a civil judgment. Such a motivation clearly does not comport with the spirit of the Bankruptcy Code." *Id.* at *4.

The court also stated that the debtor's lack of remorse and his failure to make any payments on the judgment were further indications of bad faith. *Id.* The Sixth Circuit panel also relied on the debtor's reluctance to propose a five-year plan:

> In the present case, Caldwell elected not to extend his plan beyond the minimum three year period even though only a nominal amount of all unsecured claims would be paid during this limited time frame. If Caldwell had been sincerely interested in attempting to repay his debts, he could have proposed a five year plan which would have resulted in a much larger distribution for his unsecured creditors. In addition, Caldwell's disregard for the financial interests of his creditors was evidenced by his answer when asked whether he would pay into the plan for a five year period: "Of course, I would rather not, but if that's what I need to do, that's what I'll do."

*Id.* The opinion also points out that, although the debtor had committed his income tax refunds to the plan, he elected to spend a refund received prior to confirmation to repair his vehicle. *Id.* Finally, the court summed up its holding as follows:

> The following factors, when considered together, have led us to the inescapable conclusion that Caldwell's plan was not designed to repay his creditors but was primarily created to avoid the payment of a civil judgment: (1) the plan involves a Chapter 7 nondischargeable debt, (2) the unsecured creditors will receive minimal payment under the plan, (3) the plan is of a limited duration, (4) Caldwell's lack of remorse and refusal to accept the validity and efficacy of the judgment against him, (5) his refusal to pay any amount on the judgment, and (6) Caldwell's pre-plan confirmation conduct. After reviewing Caldwell's plan with "particular scrutiny," we hold that it was clear error for the Bankruptcy Court to conclude that the plan satisfied the good faith requirement of Section 1325(a)(3).
>
> The Bankruptcy Code is intended to provide a fresh start for those persons who are inundated in monetary debt. Congress decided that persons, who attempt to reorganize, may discharge a debt that is otherwise nondischargeable in liquidation. However, it would be contrary to the spirit and purpose of Chapter 13 to approve Caldwell's plan which was not an attempt to rehabilitate but an effort to evade a civil judgment that is nondischargeable in Chapter 7.

*Id.* at *5 (citations omitted).

In this case, the plan proposes to deal with a debt that would not be dischargeable in a chapter 7 case. Indeed, the debt to Ms. Dodson is the only debt that the debtor owes and, therefore, the only debt treated in the plan. Under the plan, Ms. Dodson would receive minimal payment: the payments of $25 per week over five years will total $6,500, of which $1,000 would be paid to the debtor's attorney and an additional $200 or so would be retained by the chapter 13 trustee in payment of his commission. Thus, Ms. Dodson would receive no more than $5,300, which is a very small percentage of her claim. Although the debtor extended the duration of the plan from three to five years, she did so only after the court pointed out that the

duration of a plan is one of the factors the courts consider in evaluating good faith. And, while it appeared from the debtor's testimony that she is remorseful, it still remains that the debtor has not made any payment on the judgment despite receiving $22,400 in August 2006. When the debtor received the $22,400 inheritance, she had the ability to make a sizeable payment on Ms. Dodson's judgment. Of course, had Ms. Dodson known about the inheritance, she could have attempted to collect a portion of her judgment from those proceeds. Instead of making any payment on the judgment, however, the debtor spent all of the $22,400 and only then commenced a chapter 13 case proposing a minimal dividend to Ms. Dodson in an attempt to satisfy a judgment that would otherwise be nondischargeable in a Chapter 7 case. Under these circumstances, and in light of the guidance provided by the Sixth Circuit Court of Appeals in *Caldwell*, the court cannot conclude that the debtor's plan is proposed in good faith. *See*, *e.g.*, *In re Rose*, 101 B.R. 934 (Bankr. S.D. Ohio 1989) (giving considerable weight to debtor's failure to make voluntary prepetition payments, despite ability to do so, in finding bad faith).

Accordingly, the court will enter a separate order denying confirmation because the plan was not proposed in good faith. 11 U.S.C. § 1325(a)(3). Moreover, because the petition commencing this case was not filed in good faith and because the debtor cannot propose a confirmable plan, *see id.* § 1307(c)(5), the court will also dismiss this case.

###